IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILLIE J. RANKIN, II,        )
           )
      Plaintiff,      )
           )
           )    CIV-09-1191-D
v.            )
           )
MICHAEL J. ASTRUE,       )
  Commissioner of Social Security  )
   Administration,      )
           )
      Defendant.     )

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his concurrent applications for disability insurance and

supplemental security income benefits under Title II and Title XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues. The

matter was referred to the undersigned Magistrate Judge for initial proceedings consistent

with 28 U.S.C. § 636(b)(1)(B), and the undersigned entered a Report and Recommendation

on August 19, 2010, recommending that the Commissioner's decision be affirmed. United

States District Judge DeGuisti declined to adopt the Report and Recommendation and

directed that the Report and Recommendation be supplemented with additional analysis of

the second issue raised by Plaintiff, whether the ALJ properly assessed Plaintiff's RFC and

made findings supported by substantial evidence. Having conducted a supplemental review of Plaintiff's claims, the undersigned recommends that the Commissioner's decision be affirmed.

I. <u>Background</u>

In applications filed with the agency in June 2007, Plaintiff alleged that he became disabled on November 7, 2006, due to degenerative disc disease in his back and possible carpel tunnel syndrome in both hands. (TR 96-99, 102-104, 125). In documents submitted to the agency, Plaintiff stated he previously worked as a carpenter and concrete finisher and stopped working on November 7, 2006, due to his back impairment. (TR 126, 140). Plaintiff described constant back pain and migraine headaches limiting his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands. (TR 137). His usual activities included watching television, reading the newspaper, cooking, laundry, mowing, walking, driving, grocery shopping, occasionally fishing and hunting, and visiting with others. (TR 132-136). Plaintiff stated he did not use an assistive device for walking. (TR 138). Plaintiff estimated he could lift less than 25 pounds and walk three to four blocks. (TR 137). Plaintiff's applications were denied by the agency initially and on reconsideration. (TR 49-52). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on January 28, 2009. (TR 26-48). At this hearing, Plaintiff and a vocational expert ("VE") testified. Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he was capable of performing sedentary jobs with specific exertional restrictions

available in the national economy. (TR 17-25). Plaintiff's request for review of the decision by the Appeals Council was denied. (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Hearing Testimony, Decision, and Arguments

At his administrative hearing, Plaintiff testified that he was 49 years old and had not worked since November 7, 2006. Plaintiff stated that he suffered two work-related back injuries and that he stopped working on November 7, 2006, due to these injuries. According to Plaintiff, he was advised by a neurosurgeon that surgery would not improve his degenerative disc disease and that he should obtain treatment from a pain management specialist. Plaintiff testified that he was being treated for pain by Dr. Dickinson, that he took eight narcotic pain pills per day, and that the medication reduced his pain but did not eliminate it. (TR 36). Plaintiff stated that he also took anti-inflammatory and anti-anxiety medication for chronic pain and to help him sleep. Plaintiff testified that his back impairment

was slowly getting worse and that he had constant back pain, which usually radiated down his legs to his feet, and shoulder pain. Plaintiff stated that he could not stand or sit for very long, that he changed positions generally every 20 to 30 minutes, and that his left leg occasionally became numb. Plaintiff estimated he could stand for 10 minutes, walk a city block, could not squat or stoop, and could lift up to four pounds. Plaintiff stated that he slept only four to five hours a night and was awakened by pain, that he did "[p]retty much nothing" during the day, and that his wife and daughter performed the household and yard maintenance chores. (TR 40). Plaintiff stated that his hands were numb in the mornings and that he occasionally dropped objects due to loss of grip, although he had not received treatment for any hand impairment. (TR 40-41). Plaintiff testified that he had occasional migraine headaches that were usually controlled by medication and occurred sometimes twice a week.(TR 41). Plaintiff stated that pain affected his ability to concentrate and that his usual hobbies of hunting and fishing were "almost nonexistent." (TR 41-42).

Following the established sequential evaluation procedure, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 7, 2006, that he had a severe impairment due to degenerative disc disease, that his impairment was not disabling *per se* under the agency's Listing of Impairments, and that despite his impairment Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work except that he could only occasionally bend forward at the waist, bend at the knees to come to rest on his knees, or bend downward by bending his legs and spine. In making these findings, the ALJ found that Plaintiff's statements were not credible to the extent he alleged

5

he was unable to perform activities consistent with the ALJ's RFC finding. The ALJ further ascribed "little weight" to the opinions of Plaintiff's treating chiropractor, Dr. McClure, and treating physician, Dr. Dickinson. (TR 21, 22). Relying on the VE's testimony concerning the availability of jobs for an individual with Plaintiff's RFC and vocational characteristics, the ALJ found that Plaintiff could not return to his previous work but could perform other jobs available in the economy, including the jobs of material lister, industrial order clerk, and time keeper.

Plaintiff contends that the ALJ erred in his analysis of the opinion of Dr. Dickinson, erred in assessing Plaintiff's RFC, and erred in evaluating the credibility of Plaintiff's subjective statements concerning the severity of his pain. Defendant responds that no error occurred with respect to the ALJ's evaluation of the evidence and that the Commissioner's decision is supported by substantial evidence in the record.

IV. Medical Record

The medical record reflects that Plaintiff sought chiropractic treatment for lower back pain in February, March, and April 2000. (TR 175-210). In May 2000, Plaintiff sought treatment from Dr. Friedman, a neurosurgeon, who reported to the workers' compensation insurer of Plaintiff's employer that Plaintiff injured his lower back at work in February 2000, underwent some chiropractic treatment, and then re-injured his back, resulting in severe lower back pain. (TR 223). Plaintiff's back improved after a period of time in which he did not work and underwent physical therapy treatment, and he was released to return to work in June 2000. (TR 221-225). According to Dr. Friedman, x-rays of Plaintiff's back revealed

the presence of degeneration at the three lower levels with a disc protrusion at one level mildly compressing the left-sided nerve root and another small central disc herniation at a second level also compressing the left-sided nerve root. (TR 224). The diagnosis was severe lumbar strain superimposed on lumbar disc disease. (TR 224).

Plaintiff worked until November 2006, when he again sought medical treatment for back pain, and he underwent magnetic resonance imaging ("MRI") testing of his lumbar spine on December 29, 2006. (TR 211-212). In a neurosurgical consultative examination conducted by Dr. Friedman in January 2007 for the workers' compensation insurer of Plaintiff's employer, Plaintiff reported that he had injured his back in 2000, was treated conservatively and released to return to work, and later re-injured his back in October 2005. (TR 218-220). The MRI conducted in December 2006 was interpreted by Dr. Friedman as showing disc dessication at multiple levels, a left disc protrusion at one level compressing the left-sided nerve root, a smaller disc protrusion at another level compressing the nerve root, and a very mild levoscoliosis. (TR 219). Plaintiff reported to Dr. Friedman that he had lower back pain which worsened with any type of movement or activity and that the pain intermittently radiated into both legs. (TR 218). Plaintiff reported he was taking only nonprescription pain medication, doing regular back exercises and walking as much as possible, although he reported he did not feel much better since he stopped working. (TR 218). Dr. Friedman noted that back surgery would not improve Plaintiff's condition and that he should seek "physiatric referral to facilitate all forms of conservative management" for his pain. (TR 219). Dr. Friedman further opined that Plaintiff "could work without specific

restrictions" and noted that Plaintiff "agree[d]" with this opinion. (TR 220).

In connection with his workers' compensation claim, Plaintiff was referred to another neurosurgeon, Dr. Remondino, for a second opinion. Dr. Remondino examined Plaintiff in May 2007 and reported that Plaintiff complained of progressively more severe pain that ranged from 4 out of 10 on a good day and 9 out of 10 on a bad day. (TR 214). Plaintiff stated his pain symptoms were constant, throbbing, and burning and aggravated by almost any activity, particularly bending, stooping, or lifting. (TR 214). On examination, Plaintiff exhibited a limited range of motion in his back and a "rather stiff, slightly antalgic gait." (TR 214). Dr. Remondino noted that Plaintiff's lumbar spine MRI showed "marked degeneration of all lumbar disc spaces," as well as "lumbar scoliosis of 18 degrees to the left with the apex at the L1-2 segment." (TR 215-216). In Dr. Remondino's opinion, Plaintiff would not be a candidate for surgery, no further testing would be beneficial, and that steroid injections would not provide long-term benefit. Dr. Remondino advised Plaintiff to continue the stretching and strengthening exercises and to "learn to live with his symptoms as best he can, as there are no good alternatives." (TR 216). The physician released Plaintiff from further treatment with a permanent weight restriction of 25 pounds, which the physician noted would place Plaintiff in the "light work category." (TR 216).

In connection with Plaintiff's workers' compensation claim, Plaintiff was evaluated by Dr. McClure, a chiropractor, in February 2007 and again in June 2007. In February 2007, Plaintiff reported that he injured his back in October 2005 when he was "pulling out walls" in a bathroom during his construction job, but he continued working until November 2006.

(TR 236). Plaintiff complained of back pain radiating into his legs, and increased with bending, lifting, and twisting, although Plaintiff reported he was not taking medication for his symptoms. (TR 237). On examination, Plaintiff exhibited pain with palpation in his lumbar spine, and Plaintiff's range of movement in his back was limited. (TR 238). Dr. McClure's diagnostic impression was multilevel degenerative disc disease and multilevel disc herniation. (TR 239).

In June 2007, Plaintiff reported to Dr. McClure that he was not taking any medication for his back impairment, that he had pain in his low back radiating into both legs, and that the pain increased with bending, lifting, twisting, standing for a period of time, and sometimes with coughing or sneezing. (TR 230-231, 234). Plaintiff also complained of hand numbness, trouble sleeping, and occasional migraine headaches. (TR 231). Dr. McClure noted Plaintiff exhibited decreased range of motion in his lumbar spine, decreased "muscle testing" in his lower extremities, and "positive nerve stretch test." (TR 231, 232). Dr. McClure rated Plaintiff as suffering a 50 % permanent partial impairment of the whole body. (TR 233). Dr. McClure opined that Plaintiff would not be able to return to his previous job due to his work-related back injuries and that Plaintiff was "permanently and totally, economically disabled and not a candidate for vocational rehabilitation." (TR 229-235). Dr. McClure also opined that Plaintiff's "ability . . . to earn wages at the same level as before the injury [had] been permanently impaired" and that Plaintiff was "not able to return to any work duties at this time." (TR 233).

The record shows Plaintiff was treated by a family physician, Dr. Dickinson,

beginning in August 2007. In Dr. Dickinson's office notes dated August 2007, Dr. Dickinson noted that Plaintiff appeared to be in pain and exhibited painful range of motion. The assessment was low back pain related to degenerative disc disease of the lumbar spine and sciatic neuralgia in the left leg. (TR 268). Dr. Dickinson recommended Plaintiff continue his low back exercises, and he prescribed narcotic pain and sleeping aid medications. (TR 268). In a follow-up examination a month later, Plaintiff reported his pain was improved and he was dong well and sleeping well. (TR 266). On examination, Plaintiff exhibited pain with movement, and Dr. Dickinson continued his medications. (TR 266).

Plaintiff underwent a consultative physical examination conducted by Dr. Metcalf in September 2007. (TR 242-248). Plaintiff reported that he injured his back in 2000 and again in 2005. (TR 242). Plaintiff reported he was taking narcotic pain medication and nonprescription pain medication. (TR 242). Plaintiff complained of chronic back pain radiating down both legs, weakness in his legs, difficulty sleeping due to back and leg pain, morning stiffness, and intermittent tension headaches. (TR 242). On examination, Plaintiff exhibited limited range of back motion with bilateral tenderness, positive straight leg raising both sitting and standing, normal grip strength, normal range of motion in his shoulders, elbows, wrists, fingers, knees, and ankles, and ambulation at a "normal gait and pace," although he walked with a stiff trunk. (TR 243-244). The examiner's clinical impression was herniated disc at two levels with multiple level degenerative disc disease, chronic low back and bilateral leg pain, and mild hypertension. (TR 244).

In a follow-up examination conducted by Dr. Dickinson in November 2007, Plaintiff

10

complained of low back pain radiating into both legs and into his upper back, as well as intermittent shoulder pain. (TR 265). On examination, Plaintiff exhibited pain with shoulder and back movements, muscle spasms in his low back, and positive straight leg raising in both legs. (TR 265). His medications were continued. In January 2008, Plaintiff returned to Dr. Dickinson and complained of sleeping difficulty due to stress and back pain radiating into both legs. Plaintiff stated he was unable to maintain any regular activity due to back pain, which was aggravated by prolonged sitting, standing, or lying. (TR 270). On examination, Plaintiff exhibited pain and stiffness in his lumbar muscles and decreased range of motion due to pain and stiffness. (TR 270). Dr. Dickinson noted his diagnostic impression of low back pain due to degenerative disc disease of the lumbar spine, bilateral sciatica, and situational stress/insomnia, for which anti-anxiety medication was prescribed. (TR 270). The narcotic pain medication was continued.

In March 2008, Dr. Dickinson noted Plaintiff returned for follow-up treatment, and Plaintiff exhibited muscle spasm and stiffness in his lower back, decreased range of motion due to pain and stiffness, and positive straight leg raising in both legs. Plaintiff reported continuing low back pain with radiation into both legs. Plaintiff stated the anti-anxiety medication helped him sleep. The prescribed medications were refilled. (TR 280). In May 2008, Dr. Dickinson noted Plaintiff's complaint of increased low back pain after he attempted to clean his home and vacuum the previous day. (TR 279). Plaintiff reported he was unable to perform normal activities due to back pain, and he exhibited decreased range of motion due to pain and stiffness. The diagnostic impression included low back pain

worsened with routine activities, degenerative disc disease of the lumbar spine, sciatic neuralgia, elevated blood pressure with hypertension, and insomnia. (TR 279). The same medications were continued. In September 2008, Plaintiff returned for follow-up treatment and reported increased low back pain radiating into his right hip and leg and that he was taking the anti-anxiety medication during the day as well as at night. Dr. Dickinson increased Plaintiff's narcotic pain medication, continued the anti-anxiety medication, and added a steroid anti-inflammatory medication. (TR 278).

In February 2009, Plaintiff returned to Dr. Dickinson, who noted Plaintiff's report that he had not improved and could not stand or sit for prolonged periods of time due to back and leg pain. (TR 275). Plaintiff also complained that sitting for longer than 20 minutes caused left leg numbness, and he reported that he was not able to function without taking his medications regularly. (TR 275). On examination, Plaintiff exhibited marked muscle spasm in his back, markedly reduced range of motion of the lower back due to muscle spasm, stiffness, and pain, and positive straight leg raising at 45 degrees in both legs. (TR 276). His narcotic and anti-anxiety medications were continued, and Plaintiff was advised to take nonprescription pain medication as well. (TR 276).

Dr. Dickinson completed a residual functional capacity ("RFC") assessment dated February 11, 2009, in which the physician opined that Plaintiff could only sit or stand for 20 minutes at a time, could sit, stand, or walk less than 2 hours in a working day, would need to take breaks every 20 minutes for 10 minutes each, could occasionally lift less than 10 pounds but could never lift 10 pounds or more, would be significantly limited in his ability

to reach, handle, and finger, and would need to be absent from work an average of three times a month. (TR 281-285). Dr. Dickinson further found that Plaintiff's symptoms constantly interfered with his attention and concentration. (TR 282).

Dr. Dickinson stated on the form that he had treated Plaintiff every two months since August 2007 and that his diagnoses were degenerative disc disease in his lumbar spine and bilateral sciatic neuralgia. (TR 281). The physician identified clinical findings, symptoms, and positive objective signs in support of the RFC assessment. (TR 281-282). Dr. Dickinson found on the form that Plaintiff was not a malingerer, that emotional factors did not contribute to Plaintiff's symptoms and functional limitations, and Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the RFC assessment. (TR 282). Dr. Dickinson further found Plaintiff's prognosis was "poor that he will ever progress with improvement in his present condition. His condition will only degenerate further with time." (TR 283). Dr. Dickinson also noted that Plaintiff's medications caused adverse side effects of drowsiness and upset stomach. (TR 283).

## V. Treating Physician's Opinion

Plaintiff contends that the ALJ did not employ the established procedure for evaluating Dr. Dickinson's RFC assessment and that there is not substantial evidence to support the ALJ's reasons for rejecting this treating physician's opinion. When an ALJ considers the opinion of a treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. The regulations define "medical opinions" as:

> statements from physicians and psychologists or other

13

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a), 416.927(a). Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

In that event, the ALJ must determine what weight, if any, should be given to the opinion by considering such factors as:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1031 (quotation omitted). See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Watkins, 350

F.3d at 1300 (quotations omitted).  Moreover, the ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source.  Id. at 1301.

The ALJ found that Dr. Dickinson's RFC assessment was "internally inconsistent." (TR 22).  On the form completed by Dr. Dickinson, Dr. Dickinson opined that Plaintiff could not walk a city block without resting.  (TR 283).  Dr. Dickinson also opined that Plaintiff would need to walk around every 20 minutes for about 10 minutes at a time during the workday.  (TR 283-284).  The ALJ appropriately reasoned that these RFC assessments were not consistent with each other.  The ALJ also pointed to Dr. Dickinson's assessment that Plaintiff's use of his hands, fingers, and arms for repetitive activities was limited to 10 % of the workday.  The ALJ reasoned that Dr. Dickinson had not explained why any impairment affected these abilities.  Dr. Dickinson's treatment records do not reflect any treatment for a hand, finger, or arm impairment, except that the physician noted on one occasion that Plaintiff's range of motion in his shoulder was restricted. (TR 265).  This notation does not explain the arm, finger, and hand limitations found in the RFC assessment.  Thus, the ALJ provided a good reason that was "clear to any subsequent reviewer" for rejecting Dr. Dickinson's RFC assessment.

The ALJ reasoned that Dr. Dickinson was Plaintiff's treating physician but he was not a "specialist." (TR 22).  This is an accurate statement, as Dr. Dickinson's records indicate he is a family physician.  Additionally, Dr. Remondino opined, as the ALJ pointed out, that Plaintiff could "lift 25 pounds," and that with this limitation Plaintiff could perform "light work."  Thus, Dr. Dickinson's RFC assessment was "not consistent with the remainder of

the evidence," as the ALJ explained. The ALJ provided a sufficient explanation of his reasons for rejecting the RFC assessment, and those reasons are well supported by the record.

VI. Credibility

In his remaining arguments, Plaintiff contends that there is not sufficient evidence in the record to support the ALJ's RFC determination. In connection with the RFC assessment, Plaintiff contends that the ALJ erred in discounting the credibility of Plaintiff's assertion of disabling back, leg, shoulder, and headache pain.

At the fourth step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ found that Plaintiff had the RFC to perform work at the sedentary level so long as the work did not involve more than occasionally bending forward at the waist, occasionally bending at the knees to come to rest on his knees, or bending downward by bending his legs and spine. (TR 19-20). The ALJ provided a lengthy explanation for this RFC finding. The ALJ first discussed the credibility of Plaintiff's allegation that he was disabled by pain related to his back impairment.

The ALJ found that Plaintiff's subjective statements concerning pain were not entirely credible for the following reasons:

> [T]he medical evidence reveals [Plaintiff] has not sought means other than medication to alleviate his pain. He has only had limited physical therapy sessions since an injury on October 20, 2005, does not mention exercising, despite medical advice that [sic] would help, and has not sought other conservative treatment. After he injured his back in 2000, [Plaintiff] did obtain some chiropractic care, which helped him until he injured his back again within a few weeks. He was able to return to work as a carpenter.

(TR 20). The ALJ further reasoned that Plaintiff had advised his treating physician that pain medication had been helpful in relieving his pain and allowing him to undertake "more activity" and sleep well. (TR 21-22). Based on the ALJ's review of the medical and non-medical evidence, the ALJ determined that Plaintiff's allegations of symptoms due to pain were "not credible to the extent they [were] inconsistent with the [RFC] assessment." Plaintiff contends that the ALJ's rationale is not supported by the record because (1) Plaintiff

has continued to seek medical treatment for pain, (2) the record does not show he has been noncompliant with recommended back exercises, and (3) the medical record, specifically, the report of Dr. Remondino and the records and RFC assessment by Dr. Dickinson, supports his allegation of disabling pain.

To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987). In the ALJ's credibility determination, the ALJ expressed his consideration of several relevant factors. The ALJ considered Plaintiff's statements concerning his pain medications and the effectiveness of his medications as well as the

extensiveness of Plaintiff's attempts to obtain pain relief, the nature of Plaintiff's daily activities, and the consistency of Plaintiff's statements with objective medical evidence in the record. Contrary to Plaintiff's argument, the ALJ did not state that Plaintiff had been noncompliant with treatment. Rather, the ALJ reasoned that Plaintiff had not explored other avenues for treating his pain beyond medications. Plaintiff's treating neurosurgeon, Dr. Friedman, had recommended he seek "physiatric referral to facilitate all forms of conservative management" and his consultative neurosurgeon, Dr. Remondino, had recommended specific stretching and strengthening exercises.

Plaintiff argues that certain portions of the record support his allegations of disabling pain. However, Dr. Remondino did not state that Plaintiff was disabled due to pain and pain-related limitations. Rather, Dr. Remondino found that Plaintiff's ability to work was limited only by a 25-pound weight restriction, which the neurosurgeon noted was consistent with the ability to perform "light" work. As previously found, Dr. Dickinson's RFC assessment was appropriately discounted by the ALJ. There is no question that Plaintiff experiences pain related to his degenerative disk disease. However, "'disability' requires more than the mere inability to work without pain." Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009)(internal quotation omitted). The ALJ reasonably concluded that, based on specific reasons set forth in the ALJ's decision, the medical evidence, particularly the conclusions of Dr. Remondino and Dr. Friedman that Plaintiff could work despite his impairments, was not consistent with Plaintiff's allegations of disabling pain.

Recognizing that Plaintiff did indeed experience daily pain despite medications, the

ALJ found at step four that Plaintiff's pain-causing impairments limited him to the performance of sedentary work with additional restrictions on his ability to perform bending activities. In making the necessary credibility determination in connection with this RFC finding, the ALJ discussed the relevant credibility factors, and no error occurred in this regard. There is substantial evidence in the record to support the ALJ's credibility determination. Hence, the credibility determination should not be disturbed.

VII. RFC Assessment

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence in the record. In this regard, Plaintiff makes the curious argument that the ALJ must have substituted his medical opinion for the opinions of certain examining and non-examining physicians in the record because those physicians found Plaintiff to have an RFC GREATER than that found by the ALJ.

In the ALJ's explanation of his fourth step RFC finding, the ALJ discussed the reports of the consultative, treating, and non-examining physicians that appear in the record. The ALJ specifically discussed the opinion of Dr. Friedman that Plaintiff "could work without specific restrictions" and "was released [from further orthopedic treatment] with no restrictions per his request" and the opinion of Dr. Remondino that Plaintiff was capable of performing "light work duty" with a 25-pound lifting restriction. The ALJ also discussed the RFC assessment by the non-examining medical consultant, Dr. Sanbar, which was affirmed by Dr. Marks-Snelling, that Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 20 pounds. The ALJ further discussed other portions of these physicians' reports,

including Dr. Remondino's opinion that no further medical treatment was needed. The ALJ noted Dr. Friedman's recommendation that Plaintiff needed to exercise, see a physiatrist for pain management (which Plaintiff admitted to another physician he did not do), and learn to live with the pain. The ALJ discussed the objective findings of the consultative examiner, Dr. Metcalf, which reflected that although Plaintiff's range of movement in his lumbar spine was limited and he exhibited pain with sitting and standing, he exhibited normal range of motion in his cervical spine, he could heel, toe, and tandem walk without difficulty, he walked with a normal gait and pace, he exhibited no muscular atrophy or loss of sensation, and Plaintiff did not exhibit "chronic pain behaviors" during the examination. (TR 22, 244). Finally, the ALJ provided reasons for giving the opinion of Dr. Dickinson little weight, while giving the opinons of Drs. Remondino, Metcalf, and Marks-Snelling more weight as the ALJ found these physicians' opinions "persuasive." (TR 22-23).

The ALJ is not required to adopt the RFC assessment of treating, examining, or non-examining physicians. Rather, the RFC assessment is a decision committed to the ALJ based on the ALJ's evaluation of the medical and non-medical evidence in the record. In assessing Plaintiff's RFC for work, the ALJ recognized that Plaintiff had a pain-producing impairment and partially credited Plaintiff's allegation of severe, disabling pain. The RFC assessment further reflects the ALJ's consideration of relevant medical evidence in the record. The ALJ's RFC assessment does not reflect a substitution of the ALJ's medical opinion for the opinions of physicians in the record. This RFC assessment falls well within the opinions of Dr. Remondino, Dr. Friedman, and Dr. Mark-Snelling regarding Plaintiff's functional

restrictions resulting from his back impairment and pain. Although Dr. Metcalf did not provide an opinion regarding Plaintiff's RFC for work, the ALJ properly found that the RFC assessment was supported by the objective findings in Dr. Metcalf's report of his consultative examination of Plaintiff. Thus, the ALJ's step four determination is supported by substantial evidence in the record, and no error occurred in this regard.

At step five, relying on the VE's testimony concerning the availability of jobs for an individual with Plaintiff's RFC and vocational characteristics, including transferable skills, the ALJ concluded that Plaintiff was capable of performing jobs available in the national economy. The ALJ identified three such jobs, including the positions of material lister, industrial order clerk, and time keeper. There is substantial evidence in the record to support the ALJ's step five determination, and the Commissioner's decision denying Plaintiff's applications for benefits should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court on or before      January 10th  , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf. Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections

to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____20th_____ day of _____December_____, 2010.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE